**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                                    Case No.  07-34421

SOUTHLAND INVESTMENTS, INC.
f/k/a CCR DEVELOPMENT, LLC

            Debtor

**MEMORANDUM ON CONFIRMATION
OF RESTATED FIRST
AMENDED PLAN OF REORGANIZATION**


**APPEARANCES:**    HODGES, DOUGHTY & CARSON, PLLC
                            Dean B. Farmer, Esq.
                            Post Office Box 869
                            Knoxville, Tennessee  37901-0869
                            Attorneys for the Debtor-in-Possession

                           HERNDON, COLEMAN, BRADING & McKEE
                            Edward T. Brading, Esq.
                            Post Office Box 1160
                            Johnson City, Tennessee  37605-1160
                            Attorneys for State of Franklin Savings Bank

                           RICHARD F. CLIPPARD, ESQ.
                           UNITED STATES TRUSTEE
                            Patricia C. Foster, Esq.
                            Howard H. Baker, Jr. United States Courthouse
                            800 Market Street
                            Suite 114
                            Knoxville, Tennessee  37902
                            Attorneys for United States Trustee




**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

Before the court is the Restated First Amended Plan of Reorganization (Restated First Amended Plan) filed by the Debtor on October 16, 2008, and the Objection to Debtor's Restated First Amended Plan of Reorganization (Objection) filed by State of Franklin Savings Bank on December 4, 2008.

The confirmation hearing was held on June 30, 2009. The record before the court consists of thirty-one exhibits stipulated into evidence, along with the testimony of three witnesses, Samuel W. Loflin, owner of Freeman Glass Services, Roy Joseph Cerone, principal in the Debtor, and Richard Allen Gray, Vice President of State of Franklin Savings Bank.[1]

This is a core proceeding. 28 U.S.C. § 157(b)(2)(L) (2006).

# I

The Debtor is an inactive corporation organized under the laws of the State of Tennessee, whose principals are Mary Drew Cerone, President, and Roy Joseph Cerone, Secretary. It filed the Voluntary Petition commencing its bankruptcy case under Chapter 11 of the Bankruptcy Code on December 20, 2007, and it has continued to operate as a debtor-in-possession during the pendency of its case. The Debtor owns a 12,500 square foot commercial building located in the Brookside Industrial Park at 1917 Brookside Drive, Kingsport, Tennessee (Brookside Property), which generates rental income of $3,850.00 monthly from two tenants: Freeman Glass Services, whose monthly rent is $1,950.00, and Empire Windows, whose monthly rent is $1,900.00. The Debtor is

---

[1] Mr. Loflin's testimony was presented through his deposition taken on June 26, 2009.

obligated to State of Franklin Savings Bank on a loan secured by the Brookside Property.[2] In April 2005, the Debtor defaulted on the loan and the State of Franklin Savings Bank began collecting the rental income from Freeman Glass Services and Empire Windows. For the period from November 2005 through December 2007, the date the Debtor commenced its bankruptcy case, State of Franklin Savings Bank collected $94,912.91 in rental income from the two tenants of the Brookside Property. *See* Ex. 5.

On October 16, 2008, the Debtor filed the Restated First Amended Plan along with a Restated First Amended Disclosure Statement (Disclosure Statement), which was determined to be adequate and approved by an Order Approving Disclosure Statement, Fixing Time for Filing Acceptances or Rejections of Plan, Fixing Time for Filing Objections to Confirmation, and Fixing Date for Hearing on Confirmation, Combined With Notice Thereof entered on October 24, 2008, and amended on October 28, 2008. The Response of U.S. Trustee to Amended Restated Plan of Reorganization was filed on December 1, 2008, stating that the United States Trustee had no objection to confirmation unless unsecured creditors voted against it, which was unlikely since the largest unsecured creditor was the mother of the Debtor's principal. On December 4, 2008, State of Franklin Savings Bank filed an Objection to Debtor's Restated First Amended Plan of Reorganization (Objection to Confirmation), citing, *inter alia*, good faith, best interests, lack of approval by an impaired class, feasibility, noncompliance with the "absolute priority rule," and unfair discrimination as the bases therefor. However, pursuant to the scheduling Order entered on May 15, 2009, setting this contested

---

[2] At the time the Debtor entered into the loan with the State of Franklin Savings Bank in 1997, it was operating under the name of CCR Development, LLC. The loan was made to allow the predecessor entity to purchase the Brookside Property.

3

matter for an evidentiary hearing, the confirmation issue before the court is limited to whether the Restated First Amended Plan meets the feasibility requirement of 11 U.S.C. § 1129(a)(11) (2006).

The Restated First Amended Plan provides for four classes of claims and interests. Class One is administrative claims and expenses of the estate, including approximately $20,000.00 in attorney's fees to the Debtor's counsel and all fees payable to the United States Trustee. This Class will be paid in full upon the Effective Date.

Class Two consists of franchise and sales taxes owed to the State of Tennessee in the amount of approximately $1,000.00. This Class will be paid in full upon the Effective Date.

Class Three consists of the secured claim of State of Franklin Savings Bank in the approximate amount of $290,000.00.[3] The balance will be paid through sixty payments of $2,292.09 per month, based upon a 20-year amortization plus 7.25% interest, with a balloon payment due at the end of the five-year period, at which time the balance will be paid in full.

Class Four consists of two nonpriority general unsecured claims: to Lewis & Associates in the approximate amount of $2,200.00 and to Mary Nell Cerone in the amount of $15,000.00. Both claims will be paid in full over a forty-two month period without interest.

The Debtor proposes to fund the Restated First Amended Plan through the rental income collected on the Brookside Property. It additionally intends to either refinance its debt to State of

---

[3] This figure represents the amount of the debt owed on the petition date. Between the December 20, 2007 filing date and October 16, 2008, the date upon which the Restated First Amended Plan was filed, the Debtor made payments totaling $10,867.74 to State of Franklin Savings Bank.

Franklin Savings Bank at some time beyond twelve but before sixty months after confirmation, with all creditors to be paid the balances of their claims in full, or, in the event it has not obtained a new financing commitment within forty-eight months of confirmation, it intends to market the Brookside Property for sale, with the proceeds to pay State of Franklin Savings Bank in full and any excess to be paid to unsecured creditors on a pro rata basis. The Restated First Amended Plan also reserves the Debtor's right to sell common stock and apply the proceeds to payment of State of Franklin Savings Bank and the unsecured creditors.

Balloting on the Restated First Amended Plan commenced, and on January 7, 2009, the Debtor filed a Notice of Filing Ballot Summary, evidencing that Class Three, consisting of the secured claim of State of Franklin Savings Bank in the amount of $290,000.00 rejected the plan, while Class Four, consisting of the unsecured non-priority claims in the total amount of $17,200.00, had one ballot submitted, evidencing that Lewis & Associates, with a claim totaling $2,200.00, accepted the plan.[4]

## II

Confirmation of a Chapter 11 plan is governed by 11 U.S.C. § 1129 (2006), which provides that the court shall confirm the plan if certain requirements are met, including compliance with other provisions of Chapter 11. *See* 11 U.S.C. § 1129(a)(1). Additionally, each plan must contain certain provisions, such as designation of classes, treatment of claims, and adequate means of implementation, among others. *See generally* 11 U.S.C. § 1123 (2006). Within the context of class

---

[4] The vote of Mary Nell Cerone in favor of the Restated First Amended Plan was, with court approval, withdrawn.

designation and treatment, a debtor is afforded the ability to impair classes of creditors pursuant to 11 U.S.C. § 1124 (2006).

Following adequate disclosure of the contents and terms therein, parties provided for in a plan vote whether to accept or reject it, and an accepted – or consensual – plan is confirmed if it meets all other requirements of § 1129. *See* 11 U.S.C. §§ 1125, 1126, 1129(a)(7), (8) (2006). One such requirement is that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). State of Franklin Savings Bank challenges the feasibility of the Restated First Amended Plan.

"Feasibility is fundamentally a factual question since it necessarily depends upon a determination of the reasonable probability of payment[,]" *In re Howard*, 212 B.R. 864, 878 (Bankr. E.D. Tenn. 1997), and the Debtor bears the burden of proof by a preponderance of the evidence." *In re RADCO Props., Inc.*, 402 B.R. 666, 678 (Bankr. E.D.N.C. 2009). A feasible Chapter 11 plan is not required to "guarantee success, but it must present reasonable assurance of success." *In re Made in Detroit, Inc.*, 299 B.R. 170, 176 (Bankr. E.D. Mich. 2003) (citing *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988)). "To provide such reasonable assurance, a plan must provide a realistic and workable framework for reorganization." *Made in Detroit, Inc.*, 299 B.R. at 176 (citing *Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 1004 (E.D. Va. 1994)).

"[A] plan of reorganization which does not reasonably articulate an adequate means by which it is to be implemented [and] simply requires the creditors and courts to rely upon the 'honesty and

good intentions' of the debtors[ . . .] is an insufficient basis to satisfy creditors, courts or the standards imposed by the Bankruptcy Code." *Walker*, 165 B.R. at 1004; *see also In re Am. Homepatient, Inc.*, 298 B.R. 152, 169 (Bankr. M.D. Tenn. 2003) ("The proponent of a plan of reorganization does not need to guarantee success, but a court cannot confirm a visionary scheme that promises creditors more than the debtor can possibly attain after confirmation, notwithstanding the proponent's sincerity, honesty and willingness to make a best efforts attempt to perform according to the terms of the plan.") (internal quotations and citations omitted). In making a feasibility analysis, the court is required "to scrutinize a debtor's proposed plan payments in light of projected income and expenses in order to determine whether it is likely the debtor will be able to make the payments required by the plan." *Howard*, 212 B.R. at 879-80.

> Relevant to a finding of feasibility is: (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.

*Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., LLC (In re Brice Rd. Devs., LLC)*, 392 F.3d 274, 283 (6th Cir. 2008).

The Restated First Amended Plan provides that the Debtor will fund the plan through the collection of its monthly rents and that it intends to refinance the Brookside Property or market it for sale. With respect to the refinance or sale, Mr. Cerone testified that he believes the Brookside Property to be worth approximately $450,000.00, which is $100,000.00 more than the value assessed in March 2002, as reflected in an appraisal report dated March 25, 2002, by John P. Middleton of Middleton Appraisal Services to Randy Greene, President of State of Franklin Savings Bank. *See*

Ex. 29. In support of Mr. Cerone's valuation, the Debtor offered into evidence testimony from Mr. Loflin that in December 2008, he had discussed purchasing the building from the Debtor but that Mr. Cerone wanted $450,000.00 while he, Mr. Loflin, was looking somewhere in the $400,000.00 range. The Debtor also introduced into evidence a letter from Rick Chantry, a real estate broker with Century 21 Pro Service Realtors in Johnson City, Tennessee, for the past fifteen years, dated June 24, 2009, in which he states that he would market the Brookside Property at $525,000.00 and expect to receive offers in the range of $470,000.00 to $500,000.00 during an estimated marketing time of six to eight months, even in these uncertain economic times. *See* Ex. 32. While the court finds this proposed projected sale price speculative and of no evidentiary value, State of Franklin Savings Bank did not rebut the Debtor's valuation or possible potential to refinance and/or market the Brookside Property.

State of Franklin Savings Bank, nonetheless, makes several arguments in support of its contention that the Restated First Amended Plan is not feasible, which the court finds to be well taken, primarily focusing upon the speculative nature of the Debtor's income. Neither Freeman Glass Services nor Empire Windows has a written lease agreement with the Debtor, and both are operating under a month-to-month arrangement, paying the same rental amounts as when their tenancy began twelve years ago, albeit at times, those payments have been sporadic and have included deductions for maintenance and repairs made by the tenants themselves. When questioned about this, Mr. Cerone testified that because both tenants have occupied their respective spaces for twelve years, without incident or problem, he has had no reason to require either of them to enter into

a written lease agreement. Mr. Cerone then stated that he would attempt to obtain written leases if necessary for confirmation.

It is troublesome that written leases are not in place. The Debtor's income is derived solely from the monthly rents collected from Freeman Glass Services and Empire Windows in the amounts of $1,950.00 and $1,900.00, respectively, but without a written lease agreement, either or both could simply vacate the premises, leaving the Debtor without rental income and without recourse. The court recognizes that both businesses have been in their respective locations for twelve years and has considered the Debtor's arguments that there is no reason to believe that either business would be moving elsewhere during the pendency of its confirmed plan period. Nevertheless, without the written commitment provided by leases, the Debtor's projected income is speculative. This is further exemplified by Mr. Loflin's testimony that, while he has no active plans to relocate, if the conditions in his month-to-month arrangement changed or his rent increased, he would "aggressively look at finding us another location." Mr. Loflin also testified that he had some issues regarding maintenance of the property.

The record additionally establishes that both tenants have made irregular payments both before and during the pendency of the bankruptcy case. As shown on Exhibit 5, during the twenty-seven months that State of Franklin Savings Bank collected the rents owed by Freeman Glass Services and Empire Windows pursuant to its rent assignment, Freeman Glass Services timely made its payments, with the exception of one untimely payment in November 2007, and it deducted $1,387.09 from its rent over the course of that time period to cover maintenance expenses that it

incurred,[5] while the payments made by Empire Windows were sporadic, with three made the following month and no rental payments made for November 2006 or January 2008. The trend then continued post-petition, as evidenced by the monthly operating reports for May, June, July, and September 2008, which show deposits of only $1,950.00 having been made and past due accounts receivable in increments of $1,900.00 for those months. *See* Ex. 8; Ex. 9; Ex. 10; Ex. 12.[6] And while the August 2008 monthly operating report evidences a deposit of $4,950.00, the October 2008 monthly operating report evidences a deposit of $5,850.00, the February 2009 monthly operating report evidences a deposit of $5,800.00, the March 2009 monthly operating report evidences a deposit of $4,001.78, and the April 2009 monthly operating report evidences a deposit of $3,932.84, those amounts were insufficient to bring the past due rent current from whichever source or sources was delinquent, and the April 2009 report continues to evidence a past due accounts receivable balance of $3,800.00. *See* Ex. 11; Ex. 13; Ex. 17; Ex. 18; Ex. 19. Clearly, rent collection is an issue.

The monthly operating reports also establish that, without consistent and full payments by Freeman Glass Services and Empire Windows, the Debtor simply does not have the revenue to fund the Restated First Amended Plan. As evidenced by the September 2008 monthly operating report, the Debtor's disbursements totaled $44.90 to Merchant Services on September 5, 2008, and clearly did not include a monthly payment to State of Franklin Savings Bank. *See* Ex. 12. The October 2008 monthly operating report, which does evidence a payment on October 7, 2008, in the amount

---

[5] As discussed, Mr. Loflin also testified that there are maintenance issues with the Brookside Property, including a large hole in the back lot that needs to be fixed..

[6] Curiously, the monthly operating reports for each of these months except September 2008 erroneously continue to evidence net revenue of $3,850.00, despite the lack of deposits made and designated accounts receivable.

of $1,811.29 to State of Franklin Savings Bank, then evidences an ending book balance, after all disbursements, of only $97.10, and the November 2008 monthly operating report, which similarly evidences a payment on November 12, 2008, in the amount of $1,811.29 to State of Franklin Savings Bank, reflects an ending book balance of only $70.91 after all disbursements, indicating that, had the Debtor made the required $1,811.29 payment to State of Franklin Savings Bank in September 2008, it would have had operating deficits in both months.[7] *See* Ex. 13; Ex. 14.

Finally, the court also finds it troublesome that the Debtor has not been current on its property taxes, has not maintained insurance on the Brookside Property, and has allowed its corporate status to be administratively dissolved for failure to pay the Tennessee Department of Revenue pre-petition franchise taxes. During his testimony, Mr. Cerone acknowledged that the Debtor had been past due on its property taxes to Sullivan County and the City of Kingsport for 2008, as evidenced by Exhibits 1 and 2, respectively, and that while the Debtor had planned to pay the taxes post-confirmation, all past due property taxes were, on the advice of the Debtor's attorney, paid in full on June 29, 2009, the day before the confirmation hearing. Nevertheless, the record also reflects that the Debtor's county property taxes for 2007 were likewise delinquently paid, *see* Ex. 1, and Mr. Gray testified that State of Franklin Savings Bank paid the Debtor's taxes for 2004 and 2005 in May 2006, and that it also paid the 2006 taxes in May 2007, as evidenced by Exhibit 22.

Similarly, with respect to property insurance on the property, Mr. Gray testified that sometime in late 2004, State of Franklin Savings Bank received a cancellation notice of the insurance

---

[7] The court also notes that there are discrepancies in the monthly operating reports from month to month, most notably the October 2008 report which erroneously shows on the Statement of Income (Loss) for the Month Ended 09/30/2008 that an "interest expense" of $1,811.29 was paid by the Debtor in September.

11

on the Brookside Property, and after its attempts to work out the deficiency with Mr. Cerone, it force-placed insurance on the property beginning in May 2005, with premiums totaling $19,358.00 for the five years following. *See* Ex. 21. Although Mr. Cerone testified that the Debtor has applied for and is awaiting confirmation of insurance through Westmoreland Insurance, as of the date of the evidentiary hearing, only the forced-placed insurance covers the Brookside Property. As for the reinstatement with the Tennessee Secretary of State, Mr. Cerone testified that he has prepared the annual reports to be filed but that they cannot be filed until he clears up the past due franchise taxes owed to the Department of Revenue, which are less than $600.00 and which he plans to pay post-confirmation. Irrespective that reinstatement is easily obtained once all deficiencies to the State of Tennessee are cured, this is yet another example of the Debtor's inability to pay taxes timely and/or followup with necessary requirements to ensure that its assets are protected and maintained.

In summary, the Debtor has not met its burden of proof that the Restated First Amended Plan is feasible. State of Franklin Savings Bank's Objection will be sustained and confirmation will be denied.

An order consistent with this Memorandum will be entered.

FILED: July 2, 2009

                BY THE COURT

                */s/ RICHARD STAIR, JR.*

                RICHARD STAIR, JR.
                UNITED STATES BANKRUPTCY JUDGE